## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

UNITED STATES OF AMERICA and
STATE OF FLORIDA ex rel.
PATRICIA McCULLOUGH

       Plaintiffs,

v.

ONA COLASANTE, M.D.

       Defendant.

_____/

CASE NO. 1: 10-cv-126-SPm-AK

**FILED UNDER SEAL
PURSUANT TO 31 U.S.C.
§3730(b)(2)-- DO NOT
PLACE IN PRESS BOX OR
ENTER ON PACER SYSTEM**

## FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

1.  Relator Patricia McCullough ("Relator") brings this action on behalf of the United

States of America and the State of Florida against Defendant Ona Colasante, M.D. for treble

damages and civil penalties for the Defendant's violations of the False Claims Act, 31 U.S.C.

§3729 *et seq.*, and the Florida False Claims Act, Florida Statute 68.082.

2.  As required by the False Claims Act, 31 U.S.C. §3730(b)(2), Relator has

provided previously to the Attorney General of the United States, the United States Attorney for

the Northern District of Florida, and the Florida Attorney General a statement of all material

evidence and information related to this complaint. This disclosure statement, which is

incorporated herein, is supported by material evidence known to Relator establishing the

existence of Defendant's false claims. Because the disclosure statement includes attorney-client

communications and is submitted to the United States and the State of Florida in their capacity as

potential co-counsel in this litigation, Relator understands this disclosure to be confidential.

### Jurisdiction and Venue

3.      This action arises under the False Claims Act, 31 U.S.C. §3729 *et seq.*  This

Court has jurisdiction over this case pursuant to 31 U.S.C. §3732(a) and §3730(b), as well as 28

U.S.C. §1345 and §1331.

4.      Venue is proper in this district pursuant to 31 U.S.C. §3732(a), because the acts

proscribed by 31 U.S.C. §3729 *et seq.* and complained of herein took place in this district, and is

also proper pursuant to 28 U.S.C. §1391(b) and (c) because at all relevant times Defendant

transacted business in this district.

### Parties

5.      Relator Patricia McCullough is a registered nurse who purchased Hawthorne

Medical Center from Defendant Ona Colasante, M.D. in March 2009.

6.      Ona Colasante, M.D. is a family practice physician who owned and operated

Hawthorne Medical Center, 21815 SE 71st Avenue, Hawthorne Florida 32640, prior to selling

that practice to Relator McCullough in March 2009.

7.      Relator McCullough is an "original source" within the meaning of 31 U.S.C.

§3730(e)(4)(B).

### Medicare and Medicaid Program Requirements

8.      The Medicare and Medicaid programs require physicians to bill only for the level

of service actually provided.

9.      The Medicare and Medicaid programs will reimburse physicians only for

medically necessary services.

10.     The Medicare and Medicaid programs require physicians to maintain true and

accurate records supporting the legitimacy of claims submitted for reimbursement.

2

11.     The Medicare and Medicaid programs contain contractual requirements obligating participating physicians to return known overpayments.

12.     The Medicare and Medicaid programs prohibit routine waivers of patient co-payments and deductibles.

13.     Routine waivers of patient co-payments and deductibles are considered by the Medicare and Medicaid programs as a form of kickback to patients prohibited by the Anti-Kickback Act, 42 U.S.C. §1320a-7b.

14.     The Medicare program requires participating physicians to certify that they will comply with federal health care laws, including the Anti-Kickback Act.

15.     The Anti-Kickback Act prohibits offering, paying, soliciting, or receiving any remuneration in return for or to induce the referral of business paid for  by the Medicare and Medicaid programs.

16.     Compliance with the Anti-Kickback Act is a condition of payment by the Medicare program. *McNutt v. Haleyville Medical Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005).

17.     Violating the Anti-Kickback Act disqualifies a provider from receiving payment from the Medicare program for claims for services obtained through illegal remuneration. *McNutt v. Haleyville Medical Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005).

18.     Claims submitted to the Medicare and Medicaid programs for services obtained in violation of the Anti-Kickback Act are false and fraudulent claims under the False Claims Act. *McNutt v. Haleyville Medical Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005).

## Count I: Presenting and Causing to Be Presented False and Fraudulent Claims in Violation of 31 U.S.C. §3729(a)(1) and Florida Statute 68.082(2)(a)

19. Relator realleges and incorporates by reference paragraphs 1 through 18.

20. Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by instructing her staff to put a Q-tip into every patient's ear so that CPT code 69200 (removal of foreign body from external auditory canal) could be billed.

21. Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by instructing her staff to bill CPT code 69210 (removal of impacted ear cerumen) when this procedure had not been done. For example, Defendant caused CPT code 69210 to be billed to Medicare for a date of service of 5-29-08 on patient M.B. even though no chart note states that an ear irrigation was performed. Similarly, Defendant caused CPT code 69210 to be billed to Medicare for a date of service of 6-27-08 on patient E.C. even though no chart note states that an ear irrigation was performed.

22. Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by instructing her staff to "back bill" the Medicare and Medicaid programs for CPT code 69200 by (1) adding references to CPT code 69200 to old patient medical records, and (2) rebilling the Medicare and Medicaid programs for that procedure code.

23. Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by causing the Medicare and Medicaid programs to be billed for the services

4

of lower level providers as if those services had been performed under the direct supervision of Dr. Colasante when in fact Dr. Colasante was not on the premises when these services were performed. An example is Medicare patient F.G. who was seen on 10-1-07 by physician assistant Autumn Asbell when Dr. Colasante was not at the Hawthorne Clinic.

24. Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by causing the Medicare and Medicaid programs to be billed for bilateral surgical procedures when the patient chart documents that the surgery was not bilateral. For example, Dr. Colasante billed Medicare for performing bilateral arthrocentesis and injections on Medicare patients BH on 7-11-08 and on patient ER on 3-5-08 even though each patient had only one knee treated.

25. Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by causing the Medicare and Medicaid programs to be billed for medically unnecessary critical care procedure codes 99291 and 99292 for patients who presented for scheduled appointments and whose length of visit was not documented. For example, Medicare patient L.F.'s 2-21-08 visit was billed as a critical care code even though the diagnosis was Vitamin D deficiency and the length of visit was not documented. Similarly, Medicare patient WC's 11-19-08's scheduled appointment with Dr. Colasante was billed as a critical care code even though the diagnosis was cellulitis of the hand, the patient's vital signs were within normal limits, and the length of visit was not documented.

26. Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida

5

Medicaid program by causing the fraudulent submission of requests for reconsideration of denied Medicare claims which contained new fraudulent diagnosis codes.  For example, Dr. Colasante directed the submission of reconsideration requests following Medicare denials of sensory nerve studies (procedure codes 99904-RT and 95904-LT) in which the diagnosis code was fraudulently changed to lumbago (diagnosis code 724.2), specifically including for Medicare patient S.B. who was treated on 6-27-08.

27.     Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by causing the Medicare and Medicaid programs to be billed for medically unnecessary colposcopy procedures (CPT code 57420 colposcopy, vaginal and CPT code 56820 colposcopy, vulva) performed on patients who had previous hysterectomies, including Medicare patient A.S. on 8-25-08, Medicare patient B.V. on 10-10-08, and Medicare patient C.J. on 6-24-08.

28.     Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by causing the Medicare and Medicaid programs to be billed for colposcopies despite the fact that patients' charts lacked documentation of these procedures.

29.     Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by causing the Medicare and Medicaid programs to be billed for urinalyses based on fraudulent diagnosis codes of 780.01 (coma) for patients who were ambulating and talking, such as for example Medicare patient B.E. on 8-4-08.

30.    Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by causing the Medicare and Medicaid programs to be billed for medically unnecessary neurobehavioral status examinations (CPT procedure code 96116).

31.    Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by causing the Medicare and Medicaid programs to be billed for over $1.2 million for medically unnecessary charges for CPT procedure code 97535 (self care/home management training re activities of daily living), including for patients whose diagnosis was merely that they were overweight.

32.    Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by upcoding charges to the Medicare and Medicaid programs for evaluation and management (E&M) services, including for example the use of a family history diagnosis when this diagnosis is not pertinent to the patient's chief complaint.

33.    Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by causing the Medicare and Medicaid programs to be billed for medically unnecessary ultrasounds, X-rays, and lab tests, including services that were not documented at all.

34.    Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by causing the Medicare and Medicaid programs to be billed for the services

of lower level providers purportedly provided incident to the services of Dr. Colasante but which were actually provided without the direct supervision of Dr. Colasante, including, for example, services provided on days when Dr. Colasante was not present at the Hawthorne Medical Center.

35.     Dr. Colasante routinely, and as a pattern and practice, presented and caused to be presented false and fraudulent claims for payment to the Medicare program and the Florida Medicaid program by causing the Medicare and Medicaid programs to be billed for services obtained by routinely waiving patient copayments and deductibles, including for example for lab testing.

### Count II:  Making and Causing to Be Made False Records And Statements to Get False and Fraudulent Claims Paid or Approved by the Government in Violation of 31 U.S.C. §3729(a)(2) and Florida Statute 68.082(2)(b)

36.     Relator realleges and incorporates by reference paragraphs 1 through 18.

37.     Dr. Colasante routinely made and caused to be made false records and statements to get false and fraudulent claims paid or approved by the Medicare program and the Florida Medicaid program by fraudulently obtaining a CLIA laboratory certification which enabled Dr. Colasante to bill Medicare $758,222 in 2007 and $601,929 in 2008 for laboratory services.

38.     Dr. Colasante routinely made and caused to be made false records and statements to get false and fraudulent claims paid or approved by the Medicare program and the Florida Medicaid program by tampering with patient charts by fraudulently misrepresenting the identity of individuals who read X-rays and ultrasounds and by adding notes to patient charts without having seen the patients.  For example, Dr. Colasante added notes to the chart of Medicare patient J.S. for the 10-8-07 date of service and changed the X-ray report for the 7-14-08 date of service.  Dr. Colasante also added notes to the chart of Medicare patient W.M. for the 12-15-06 and 4-3-08 dates of service and changed the X-ray report for the 7-23-08 date of service.

8

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendant and order:

(a)     That the United States and the State of Florida be awarded damages in the amount of three times the damages sustained by the United States and the State of Florida because of the false and fraudulent claims alleged within this Complaint, as the False Claims Act, 31 U.S.C. §3729, and the Florida False Claims Act provides;

(b)     That civil penalties of $11,000 be imposed for each and every false and fraudulent claim that Defendant presented to the United States and the State of Florida;

(c)     That pre and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which Relator necessarily incurred in bringing and pressing this case;

(d)     That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act violations for which redress is sought in this Complaint;

(e)     That the Relator be awarded the maximum amount allowed pursuant to the False Claims Act and the Florida False Claims Act; and

(f)     That the Court award such other and further relief as it deems proper.

## Demand for Jury Trial

Relator, on behalf of herself, the United States and the State of Florida, demands a jury trial on all claims alleged herein.

Respectfully submitted,

Barry A. Cohen
Florida Bar No. 096478
bcohen@tampalawfirm.com
**Kevin J. Darken**
Florida Bar No. 0090956
kdarken@tampalawfirm.com
COHEN, FOSTER & ROMINE, P.A.
201 East Kennedy Boulevard, Suite 1000
Tampa, Florida 33602
Telephone: (813) 225-1655
Facsimile: (813) 225-1921
Attorneys for *Qui Tam* Relator

## CERTIFICATE OF SERVICE

I HEREBY CERIFY that the foregoing False Act Claim Complaint and Demand for Jury Trial has been furnished by *Federal Express* to: **Thomas Kirwin,** United States Attorney, United States Attorney's Office, 300 East University Avenue, Suite 310, Gainesville, Florida 32601; Attorney General Eric Holder, United States Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001; **Attorney General Bill McCollum**, Office of Attorney General, The Capitol, Tallahassee, Florida 32399-1750; **Chief Financial Officer Alex Sink**, Department of Finance, 200 East Gaines Street, Tallahassee, Florida 32399-03001 and the **Civil Process Clerk**, 401 Southeast 1st Avenue, Gainesville, Florida 32601 on this **29th** day of June 2010.

10

Barry A. Cohen
Florida Bar No. 096478
bcohen@tampalawfirm.com
**Kevin J. Darken**
Florida Bar No. 0090956
kdarken@tampalawfirm.com
COHEN, FOSTER & ROMINE, P.A.
201 East Kennedy Boulevard, Suite 1000
Tampa, Florida 33602
Telephone: (813) 225-1655
Facsimile: (813) 225-1921
Attorneys for *Qui Tam* Relator

11

**FedEx** Express

fedex.com  1.800.GoFedEx  1.800.463.3339

**FedEx. US Airbill**

Express

**RECIPIENT: PEEL HERE**

8718 0459 2511

1 From  This portion can be removed for Recipient's records.

Date 6/28/10

Sender's Name  Kevin J. Darken, Esq.  Phone 813 225-1655

Company  COHEN  FOSTER & ROMINE, P.A.

Address  201 E KENNEDY BLVD STE 1000

City TAMPA  State FL  ZIP 33602-5827

2 Your Internal Billing Reference  McClesbach

3 To
Recipient's Name  Tiann Flecke  Phone 352 280-3400

Company  Clerk US District Court

Address  401 E. 1st Ave  Room 243

City  Gainesville  State FL  ZIP 32601

8718 0459 2511

0418443275

XH CDKA

TUE - 29 JUN  AA
STANDARD OVERNIGHT

32601
FL-US
JAX